1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## SOUTHERN DISTRICT OF CALIFORNIA

8
9

JOSE RAMON SANDOVAL,

CASE NO. 06CV2814-LAB (JMA)

10

Plaintiff,

**ORDER REJECTING REPORT & RECOMMENDATION AND DENYING HABEAS PETITION**

vs.

11
12

SECRETARY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,

[Dkt No. 5]

13
14

Defendant.

15

**I.     INTRODUCTION**

16         Jose Ramon Sandoval ("Sandoval" or "Petitioner"), proceeding *pro se* with his

17   28 U.S.C. § 2254 habeas corpus petition, asserts one ground for relief, alleging the trial

18   judge at his December 2, 2003 sentencing infringed his due process rights by imposing an

19   eight-year upper term sentence for his forcible rape conviction, for a total sentence of 12

20   years, in violation of Blakely v. Washington, 542 U.S. 296 (2004).  He alleges "the trial court

21   improperly relied upon facts neither admitted by Sandoval nor found by a jury." Pet. 4:20-22.

22   He seeks habeas relief in the form of release from custody, or either "(a) a new trial on the

23   aggravating factors for imposition of an upper term, or (b) in the interests of judicial economy,

24   immediately resentence SANDOVAL to the middle term of 6 years, for an aggregate

25   sentence of 10 years." Pet. 6:25-7:1.

26         Respondent argues Sandoval's claim is rendered unexhausted by Cunningham v.

27   California, -- U.S. --, 127 S.Ct. 856 (Jan. 27, 2007), purportedly casting his Blakely claim in

28   a fundamentally different light than existed at the time he initially exhausted the claim in the

1  state courts.  The Cunningham Court held California's determinate sentencing law ("DSL")

2  violated the Sixth Amendment because it allowed sentencing courts to impose an elevated

3  term based on aggravating factors judges found to exist by a preponderance of the evidence.

4  That case also construed the "statutory maximum" sentence to be the middle term, from

5  which a court may upwardly depart only on findings beyond a reasonable doubt of

6  aggravating facts beyond the elements of the offense, or in consideration of additional facts

7  admitted by the defendant.  Id. at 862.

8      Respondent suggests the federal Petition be held in abeyance and any decision be

9  stayed to allow Sandoval to present his Blakely claim again in state court for reevaluation in

10  consideration of Cunningham.[1]  Alternatively, Respondent argues the Petition should be

11  denied, notwithstanding Sandoval's purported failure to exhaust his state court remedies as

12  Respondent construes them, contending:  relief is precluded by Teague v. Lane, 489 U.S.

13  288 (1989) (non-retroactivity of new rules of criminal procedure); the state court's

14  adjudication of the claim was objectively reasonable, and did not violate the Cunningham

15  rule (assuming retroactivity); and any error was harmless.[2]  Ans. P&A pp. 2:12-14, 5-14; see

16  R&R 2:1-7, 6:1-7, 11:7-11.  Sandoval filed no Traverse.

17      This matter is before the court on the Report and Recommendation ("R&R") of

18  Magistrate Judge Jan M. Adler.  The R&R frames the "dispositive issue" as whether

19  Cunningham applies retroactively within the meaning of Teague, 489 U.S. at 299-316

---

20

21  [1]  Having set up the Cunningham "claim" as its own construct, Respondent purports to
   demonstrate why Sandoval cannot succeed on a that claim.  Fourteen pages later, the Answer

22  unexpectedly states:  "In any event, the decision in Cunningham is not applicable to Petitioner in
   federal habeas corpus."  Ans. 14:15-16.  The court finds no indication in the docket that Sandoval

23  "seeks application of Cunningham to his case."  Ans. 5:1-2.

24  [2]  "The denial of the right to a jury trial on aggravating circumstances is reviewed under the
   harmless error standard set forth in Chapman v. California (1967) 386 U.S. 18, as applied in Neder

25  v. United States (1999) 527 U.S. 1."  Sandoval, 41 Cal.4th at 838 (full citations omitted).  "In
   Washington v. Recuenco (2006) [548 U.S. 212], the high court held that a similar harmless error

26  analysis applies to the failure to submit a sentencing factor to a jury, finding no distinction, for
   purposes of harmless error analysis of Sixth Amendment violations, between a sentencing factor that

27  must be submitted to a jury and an element of a crime."  Id.  "Under the framework identified in Neder
   and [United States v.] Zepeda-Martinez [470 F.3d 909 (9th Cir. 2006)], this court looks at the record

28  to consider the state of the evidence in support of the sentencing factor to determine whether the
   error was harmless."  Chioino v. Kernan, 2007 WL 3105081 * 8 (N.D.Cal. Oct. 23, 2007).

06CV2814

1  (holding although a "new rule" of *substantive* criminal law ordinarily will be applied

2  retroactively to cases which have already become final, a "new rule" of criminal *procedure*

3  may be applied retroactively on collateral review only if it falls within one of two narrow

4  exceptions). R&R 2:8-9. The R&R recommends the court find "it is unable to either grant

5  or deny habeas relief at this time irrespective of the Teague analysis" because, adopting

6  Respondent's view, "state court remedies remain available" to Sandoval. R&R 2:8-12, 17:9-

7  16 ("it is not 'perfectly clear' that Petitioner 'has no chance of obtaining relief' due to a

8  Teague bar, under section 2254(d), or under the harmless error doctrine. . . ."); *see* R&R

9  11:16-19 ("the Court is precluded at this time from finding that 'it is perfectly clear that

10  Petitioner has no chance of obtaining relief' as to his claim," so that "without adjudicating the

11  merits of the claim at this time, the Court finds that it may not deny the Petition while state

12  court remedies remain available to Petitioner"). Neither party filed Objections to the R&R.

13      This court approaches the issues somewhat differently, and with the benefit of

14  clarifying authority decided subsequent to the R&R. In particular, it finds the prior conviction

15  factor Sandoval's sentencing court relied on to impose the upper term for the rape conviction

16  was sufficient to support that result without raising any constitutional or federal law issue,

17  standing alone and irrespective of any other factors recited on the record. Moreover, even

18  reaching a Teague analysis, it is now sufficiently clear to this court Cunningham announces

19  a new rule of criminal procedure, but one that has not been and will not be applied

20  retroactively. For all the reasons discussed below, the R&R is **REJECTED** and the Petition

21  is **DENIED** on the merits.

22  **II.    BACKGROUND**

23      As part of a plea bargain, Sandoval pled guilty to one count of forcible rape and

24  admitted a weapon use allegation (Pen. Code §§ 261(a)(2), 12022.3(a)) after the jury was

25  unable to reach a verdict on the rape charge and after the court denied his motion to

26  withdraw his plea. He acknowledged he could receive a sentence of up to eighteen years

27  in prison. The court agreed not to impose the maximum term on the enhancement and

28  agreed to dismiss charges in another case. Lodg. 1 at CT 5-6, 80-82. At Sandoval's

1  sentencing, the court recited the aggravating factors it considered in imposing the upper term

2  of eight years for the rape conviction:

> With respect to the appropriate sentence that might be imposed by the court in this case, as to the PC261(a)(2) charge, the court imposes the upper term of eight years. I do so taking into account 421(a)(3), the victim was vulnerable given the circumstances. **I don't give that circumstance great weight**. . . . His prior convictions are numerous and of increasing seriousness. He has a significant criminal history. Over the course of not many years the defendant sustained a number of convictions: BC23152 in '92. He was revoked several times in that matter. In '93, VC10852. In '93 again, VC10851, felony matter. In '94 PC 48789 matter. '94, an escape, another felony case pursuant to Penal Code Section 4532(b). And then ultimately this offense.
>
> The defendant has violated the law on a number of occasions. He has served separate prison terms pursuant to 4.421(b)(3). I take that into account. 4.421(b)(5), his past performance on probation was unsatisfactory. In his prior matters he had been, as referenced, revoked a number of times. Under 4.408(a) the defendant did flee to avoid prosecution of this matter . . . .
> . . .
>
> Taking all of those things into account, **I put a lot of weight in the criminal history**, on the facts and circumstances of this particular case, I believe the eight-year term, upper term, is appropriate. . . .

17  Lodg. 3, RT at 957-958 (emphasis added).

18  The procedural history of Sandoval's case, as intertwined with pertinent evolving legal

19  standards before and after his sentencing, is as follows:

June 26, 2000    The United States Supreme Court decides <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), expanding Sixth Amendment jurisprudence to extend a defendant's right to trial by jury, under the beyond-a-reasonable-doubt standard regarding the elements of the crime, to the fact-finding determinations used to enhance sentences. *"Other than **the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."* <u>Id.</u> at 490, 491-97 (emphasis added) (holding a defendant's constitutional rights are violated when a judge imposes a sentence greater than the maximum he or she could have imposed under state law without the factual finding defendant challenges having been decided by the jury or admitted by the defendant). As clarified in <u>Blakely</u>, "[t]he 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004), *citing* <u>Ring v. Arizona</u>, 536 U.S. 584, 602 (2002).

| | | |
|---|---|---|
| 1 | December 2, 2003 | Sandoval's trial court sentences him to the upper term of 8 years for the rape conviction plus the presumptive middle term of 4 years for the use of knife allegation.  Lodg. 3 p. 958.  The court recites as the justification for imposing the 8-year upper term his having taken into account: "the victim was vulnerable given the circumstances," although the judge states "I don't give that circumstance great weight;" "**his prior convictions are numerous and of increasing seriousness**;" "he has a **significant criminal history**;" "over the course of not many years **the defendant sustained a number of convictions**" between 1992 and 1994; "he was revoked several times" in one of the matters, escaped in another felony case; he "did flee to avoid prosecution of this matter;" and "there was planning involved and some level of sophistication involved as this crime was carried out," including "the use of the duct tape, [and] the fact that he went in ready, willing, and able to use the knife."  Lodg. 3, pp. 957-58 (emphasis added). |
| 10 | June 24, 2004 | The United State Supreme Court decides <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04 (2004) (holding "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings," and "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment, . . . and the judge exceeds his proper authority"). |
| 15 | January 12, 2005 | The United States Supreme Court decides <u>United States v. Booker</u>, 543 U.S. 220 (2005), applying the <u>Blakely</u> holding to find the federal Sentencing Guidelines violate the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court rather than by a jury applying the beyond-a-reasonable-doubt standard. <u>Booker</u>, 543 U.S. at 243-440.  Reaffirming <u>Apprendi</u>, the Court held: "Any fact (**other than a prior conviction**) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 543 U.S. at 244 (emphasis added). |
| 21 | March 15, 2005 | California Court of Appeal, in a two-to-one decision, affirmed Sandoval's conviction but remanded for resentencing, on grounds the trial court relied on six aggravating factors in support of its imposition of the upper term, only one of which (*i.e.*, Sandoval's prior convictions and service of prior prison terms) could be properly decided by the judge under <u>Apprendi</u> and <u>Blakely</u>, opining that the trial court's other recited aggravating factors -- victim vulnerability, crime sophistication and planning, and flight to Mexico to evade prosecution -- required jury determinations beyond a reasonable doubt.  Lodg. 7. |
| 26 | April 19, 2005 | Sandoval petitioned the California Supreme Court for review.  Lodg. 8. |
| 28 | June 8, 2005 | Petition For Review granted, but further action deferred pending that court's consideration and disposition of a then-pending "related case," <u>People v. Black</u>, S126182.  Lodg. 9. |

| September 7, 2005 | California Supreme Court transfers the matter back to the Court of Appeal with directions to vacate its decision and to reconsider the cause in light of its <u>People v. Black</u> ("<u>Black I</u>"), 35 Cal. 4th 1238 (2005) decision.  Lodg. 10. |
| October 21, 2005 | On remand from the California Supreme Court, the Court of Appeal affirms Sandoval's sentence to the upper term for rape as not a violation of his right to a jury trial on the aggravating factors the trial court relied on, pursuant to the higher court's rejection of that argument in <u>Black I</u>, 35 Cal.4th at 1253-61, 1254 (holding "the upper term is the 'statutory maximum' and a trial court's imposition of an upper term sentence does not violate a defendant's right to a jury trial under the principles set forth in <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>").  Lodg. 11. |
| December 2, 2005 | Sandoval files his Petition For Review of the remanded decision in the California Supreme Court.  Lodg. 12. |
| January 6, 2006 | The California Supreme Court summarily denies his Petition For Review.  Lodg. 13. |
| April 6, 2006 | Sandoval's conviction became final.  *See* <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (conviction final ninety days thereafter, when the time within which to file a petition for writ of *certiorari* expires); Sup. Ct. R. 13. |
| December 29, 2006 | Sandoval files his federal habeas Petition, relying on the same <u>Blakely</u> argument he had asserted in the state courts as his sole ground for relief. |
| January 22, 2007 | The United States Supreme Court decides <u>Cunningham v. California</u>, -- U.S. –, 127 S.Ct. 856, 860, 870-71 (U.S. (Cal.) 2007), overruling <u>Black I</u> and holding California's DSL violated the Sixth Amendment because it allows the sentencing court to impose an elevated sentence based on aggravating factors it found to exist by a preponderance of the evidence.<br><br>"[O]ur decisions from <u>Apprendi</u> to <u>Booker</u> point to the middle term specified in California's statues, not the upper term, as the relevant statutory maximum," and "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent."[3] <u>Id.</u> at 871. |

---

[3]  "The Federal constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, **other than a prior conviction**, not found by a jury or admitted by the defendant") <u>Cunningham</u>, 127 S.Ct. 856 (emphasis added), *citing, inter alia,* <u>Apprendi</u>, 530 U.S. at 490 (establishing a bright-line rule: **except for a prior conviction**, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").  The <u>Blakely</u> Court defined the relevant "statutory maximum" as "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." <u>Blakely</u>, 542 U.S. at 303-04.  "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." <u>Cunningham</u>, 127 S.Ct. at 869, *citing* <u>Blakely</u>, 542 U.S. at 305 & n.8. "[O]ur decisions from <u>Apprendi</u> to <u>Booker</u> point to the middle term specified in California's statues,

| | | |
|---|---|---|
| February 20, 2007 | United States Supreme Court grants the <u>Black I</u> defendant's petition for writ of *certiorari* on his habeas petition, vacating <u>Black I</u> judgment and remanding the case to the Supreme Court of California for further consideration in light of <u>Cunningham</u>. <u>Black v. California</u>, -- U.S. --, 127 S.Ct. 1210 (2007). |
| March 9, 2007 | Respondent answers the Petition, positing it should be denied because Sandoval's claim is unexhausted and thus not properly before the court, arguing <u>Cunningham</u> cast the <u>Blakely</u> claim in a significantly different light, so he should be required to return to state court to present his claim again in light of that new authority, with this action stayed while he exhausts the claim there.  Respondent also argues in any event, <u>Teague</u> bars the claim, and any error in the state court proceedings was harmless. |
| June 8, 2007 | Judge Adler enters his R&R Sandoval's Petition be stayed pending exhaustion of state court remedies, in consideration of <u>Cunningham</u> and retroactivity issues associated with the timing of that decision *vis-a-vis* Sandoval's sentencing and post-conviction proceedings. |
| July 19, 2007 | The California Supreme Court decides <u>People v. Black</u> ("<u>Black II</u>"), 41 Cal.4th 799 (2007) (on remand).  It determines, applying <u>Cunningham</u> and its antecedents: |
| | "[U]nder the DSL, **the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence**. . . .The court's factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term.  **No matter how many**   For <u>Blakely</u> issue purposes, the relevant statutory maximum sentence a judge may impose is the sentence available without finding any additional facts.  <u>Blakely</u>, 542 U.S. at 303-304. **No matter how many additional aggravating facts are found by the court, the upper term remains the maximum that may be imposed.  Accordingly, judicial fact finding on those additional aggravating circumstances is not unconstitutional.**"  <u>Black II</u>, 1 Cal.4th at 816. |
| July 19, 2007 | In <u>People v. Sandoval</u>,[4] 41 Cal.4th 825 (2007), decided the same day as <u>Black II</u> and also applying <u>Cunningham</u>, the California Supreme Court held that imposing an upper term sentence on defendant violated her jury trial right, the Sixth |

not the upper term, as the relevant statutory maximum," and "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." <u>Id.</u>,127 S.Ct. at 871. California's DSL was amended post-<u>Cunningham</u>.  *See* <u>Sandoval</u>, 41 Cal.4th at 845 ("while this case was pending, the California Legislature amended the DSL").

---

[4]   No apparent relationship to this Petitioner or this case.

1
2
3
4
5
6
7
8
9

Amendment error was not harmless, the appropriate remedy for Sixth Amendment error was remand for the trial court to exercise sentencing discretion to impose lower, middle, or upper term, and addressed "what type of resentencing proceedings must be conducted in those cases, like the present case, in which a Sixth Amendment error requires reversal of an upper term sentence and a remand for resentencing." Sandoval, 41 Cal.4th at 845. As distinguishable from this case, that reviewing court concluded *none* **of the aggravating factors recited by the sentencing court** (*i.e.*, crime of extreme violence, callous behavior, no concern for consequences, particularly vulnerable and unarmed victims who were inebriated and ambushed from behind and unable to defend themselves) came within the exceptions identified in Blakely, none was admitted by the defendant or established by the jury's verdict, **and the defendant had no prior criminal convictions**.

10   Thus, the California Supreme Court expressly addressed and has revealed how it will

11   treat the Sixth Amendment sentencing issues implicating the Apprendi/ Blakely/ Booker/

12   Cunningham line of United States Supreme Court cases, after the R&R was entered.  As

13   discussed below, this court concludes it is now clear Sandoval cannot prevail should he

14   return to state court to reassert his Blakely claim in consideration of Cunningham. Any

15   remand would be futile, and for that reason, the court rejects the non-exhaustion

16   recommendation to reach the merits of his Petition.

17   **III.    DISCUSSION**

18   **A.    Legal Standards**

19   **1.    Habeas Review**

20   "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall

21   entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant

22   to the judgment of a State court only on the ground that he is in custody in violation of the

23   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254

24   habeas proceedings thus measure state convictions against federal constitutional

25   requirements applicable to the states.  Only errors of federal constitutional magnitude will

26   support federal intervention in state judicial proceedings, and only to correct such errors.

27   *See* Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989); Jackson v. Ylst, 921 F.2d

28   882, 885 (9th Cir. 1990).

06CV2814

A writ petition decided under the 1996 standards enacted through the Antiterrorism And Effective Death Penalty Act ("AEDPA") will not be granted unless the state court decision denying a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see* Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996); Carey v. Musladin, -- U.S. –, 127 S.Ct. 649 (Dec. 11, 2006). A state court decision is "contrary to" clearly established Supreme Court precedent if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause, the test is objective unreasonableness of the state court's application of "the correct governing legal rule from this Court's cases" applied to "the facts of the particular state prisoner's case," irrespective of whether the decision was "erroneous" or "incorrect." Id. at 407, 411; Lockyear v. Andrade, 538 U.S. 63, 75-76 (2003). To satisfy the AEDPA requirement the federal law the petitioner relies on was "clearly established," a reviewing court must look to the law as it existed in United States Supreme Court rulings at the time the challenged state court decision was rendered. Williams, 529 U.S. at 412, 405, 413; *see* Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

## 2. R&R Review

A district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Rule 72(b); *see* 28 U.S.C. § 636(b)(1). An objecting party may "serve and file specific objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Rule 72(b).

In reviewing an R&R, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections are made, the court must make a *de novo* determination of the factual findings to which there are objections). "If neither party contests the magistrate's proposed findings of fact,

the court may assume their correctness and decide the motion on the applicable law." Orand v. United States, 602 F.2d 207, 208 (9th Cir. 1979).  The court reviews *de novo* the magistrate judge's conclusions of law.  Gates v. Gomez, 60 F.3d 525, 530 (9th Cir. 1995); Robbins v. Carey, 481 F.3d 1143, 1146-47 (9th Cir. 2007) ("determinations of law by the magistrate judge are reviewed *de novo* by both the district court and [the court of appeals]").  Here, the court need only address the disposition of the Petition based on conclusions of law, as no party has filed objections to the R&R.

### B.   R&R Analysis

The R&R was prepared before later case law clarified whether the January 2007 Cunningham decision announced a "new rule" within the meaning of the Teague non-retroactivity principle and whether that rule would be considered substantive or procedural. The R&R concluded the court "is unable to deny the Petition as long as state court remedies remain available to Petitioner," and recommends the Petition be stayed because "it is not 'perfectly clear' that Petitioner 'has no chance of obtaining relief' due to a Teague bar, under section 2254(d), or under the harmless error doctrine."[5]  R&R 17:9-11, *quoting* Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 1336 (2006).

The Cunningham case appears not to have been applied retroactively by Ninth Circuit district courts since it was decided.[6]  As demonstrated below, this court concurs with the many analyses concluding Cunningham merely introduces a new rule of criminal procedure

---

[5]   The R&R suggests "[t]here is a powerful argument that the [Cunningham] rule at issue here would be considered substantive rather than procedural, and therefore retroactively applicable," while opining the court need not decide the issue now. R&R13:27-14:11. This court is persuaded that Cunningham will not apply retroactively. *See, e.g.*, Rosales v. Horel 2007 WL 1852186 (S.D.Cal. Jun. 26, 2007); Ayala v. Ayers 2007 WI 2019538 (S.D.Cal. Jul. 9, 2007); Hally v. Scribner 2007 WI 809710 (E.D.Cal. Mar. 15, 2007). The Ninth Circuit has already ruled that the new procedural rule announced in Blakely does not apply retroactively, and Cunningham relied heavily on Blakely. Blakely error is not "structural" requiring automatic reversal, but is subject to the harmless beyond a reasonable doubt standard. *See* Washington v. Recuenco, 548 U.S. --, 126 S.Ct. 2546 (2006), *relying on* Neder v. United States, 527 U.S. 1 (1999).

[6]   *See* Som v Evans, 2008 wl171010 *4 (E.D.Cal. Jan. 18, 2008), *citing:* Jordan v. Evans, No. 07CV466-J (NLS), 2007 WL 2703118, at *21 (S.D.Cal. Sept.14, 2007); Beyett v. Yates, No. C 06-7598 WHA (PR), 2007 WL 2600745, at *2 (N.D.Cal. Sept.10, 2007); Zimmeth v. Hernandez, No. 05CV1695 JAH (RBB), 2007 WL 2556771, at *9 (S.D.Cal. Sept.4, 2007); Lopez v. Campbell, No. 1:05-cv-00481 LJO-TAG HC, 2007 WL 2500424, at *3 (E.D.Cal. Aug.30, 2007); Marquez v. Evans, No. C 06-0913 CRB (PR), 2007 WL 2406867, at *9 (N.D.Cal. Aug.20, 2007); Bouie v. Kramer, No. CIV S-06-1082 GEB GGH P, 2007 WL 2070330, at *3 (E.D.Cal. July 13, 2007). .

1   inapplicable retroactively to cases on collateral review.  In addition, the California Supreme

2   Court has since substantiated if a prior conviction is one of the aggravating factors a

3   sentencing judge relies on to impose the upper term for a particular conviction, it will not

4   disturb the sentence on <u>Blakely</u>/<u>Cunningham</u> grounds.  *See* <u>Black II</u>, 41 Cal.4th 799.  The

5   rationale for the recommendation the Petition be stayed and held in abeyance accordingly

6   has lost its force.

7       The alleged error in Sandoval's sentencing "is the imposition of the upper term based

8   on facts, other than facts related to Petitioner's prior convictions, which were found by the

9   trial judge under a preponderance of evidence standard."  R&R 16:22-24.  The R&R

10  acknowledges "three of the six factors relied on by the sentencing judge involved Petitioner's

11  prior convictions, including the prior convictions themselves, the fact that Petitioner served

12  prior prison terms as a result of those convictions, and that Petitioner had performed badly

13  on probation."[7]  R&R 16:26-17:1.  The R&R opines that had the sentencing judge relied

14  *solely* on Sandoval's prior convictions in imposing the upper term, "the Sixth Amendment

15  would not be implicated due to the <u>Apprendi</u> exception."  R&R 8:16-20.  Inasmuch as the

16  sentencing judge "also relied on several other factors in imposing the upper term"

17  unconnected to Sandoval's prior convictions, the R&R construes <u>Cunningham</u> as requiring

18  a finding the upper term for his rape conviction was selected in a constitutionally infirm

19  manner.  R&R pp. 8-9, 16:26-17:1.  Intervening case law casts doubt on the R&R's

20  underlying premise.

21      The R&R correctly identifies the "state of the law at the time Petitioner sought relief

22  in the state appellate and supreme courts, and at the time his conviction became final" as

23  governed by the holdings in <u>Apprendi</u>, <u>Blakely</u>, <u>Booker</u> and, with respect to California's DSL,

24

25      [7]   The other three factors "included the findings that: (1) the victim was particularly
    vulnerable; (2) Petitioner fled the crime scene to avoid arrest; and (3) the crime involved
26  sophistication and planning," all factors the R&R ascribed as raising "potential weightiness" concerns
    adequate to render "the 'record review [as] leav[ing] the conscientious judge in grave doubt' about
27  whether the trial judge would have selected the upper term if he had not taken these factors into
    consideration."  R&R 17:4-8, *quoting* <u>Padilla v. Terhune</u>, 309 F.3d 614, 621-22 (2002).  This court
28  reads the record as substantiating the trial court expressly considered the most important factor to
    be Sandoval's criminal record.  Lodg. 3, RT at 957-958.  The R&R inference, based on its "harmless
    error" analysis, suggests had it reached the merits, it would have recommended granting the Petition.
    With due respect, this court reaches a different result.

1   by "Black I", 35 Cal. 4th at 1255-56, *vacated in February 2007 by* Black v. California, 127

2   S.Ct. 1210 (granting *certiorari*, vacating judgment, and remanding to California Supreme

3   Court for further consideration in light of Cunningham, overruling Black I).  R&R 7:8-27. It

4   appears to this court under clearly established Supreme Court authority a prior conviction

5   finding has consistently furnished an exception to restrictions on fact-finding used to impose

6   an upper term, both before and after Cunningham.  The Apprendi exception for judicial fact-

7   finding of a prior conviction does not require any jury determination or higher standard of

8   proof before it may be used as a permissible aggravating factor in support of an upper term

9   sentence. *See* Cunningham, 127 S.Ct. at 868-71 ("***Except for a prior conviction***," a

10  sentencing judge may not rely on facts not found by a jury beyond a reasonable doubt or

11  admitted by the defendant in imposing upper terms) (emphasis added).

12          In consideration of the July 2007 California Supreme Court's decision in Black II, 41

13  Cal.4th 799, holding one permissible aggravating factor (such as a prior conviction, which

14  a judge may find) is sufficient to justify an upper term sentence, the court concludes a

15  remand to state court with a stay of this federal action would be futile.  As discussed below,

16  the presence of prior criminal history is a factor exposing a defendant to eligibility for an

17  upper term sentence, so the clear outcome Sandoval could expect on his record should he

18  return to state court for reexamination of his Blakely claim is denial again.

19          **C.     Exhaustion**

20          Sandoval's federal habeas claim alleging a violation of the United States Supreme

21  Court holding in Blakely, 542 U.S. 296 is the same claim he presented to the California

22  Supreme Court on direct review and on Petition For Review after remand.  The claim is

23  accordingly exhausted, but for the consideration Respondents urge on the court:

24  "Petitioner's sole claim, that the trial court erred when it sentenced him to the upper term,

25  without a jury's determination of the factors in aggravation, is unexhausted and thus not

26  properly before this court" purportedly due to the subsequent Cunningham decision,

27  warranting stay and abeyance of the federal Petition.  Ans. 2:12-44.

28  \\

1   Respondent relies *inter alia* on <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971) for the

2   proposition "**a state prisoner who believes** that some decision of the United States

3   Supreme Court subsequent to the state court decision in his case requires that his conviction

4   or sentence be set aside should first pursue any state remedy which may be available to

5   present that contention before applying for a federal writ of habeas corpus."  Ans. 4:24-28

6   (emphasis added), *quoting* <u>Blair v. California</u>, 340 F.2d 741, 7435 (9th Cir. 1965).

7   Respondent's entire exhaustion argument, is predicated on its own construction of the law,

8   not on any issue or request raised by the Petitioner.  Respondent argues <u>Cunningham</u> casts

9   his <u>Blakely</u> claim "in a fundamentally different light," warranting a return to state court to

10  decide the issue anew.  R&R 10:5-17 (adopting Respondent's view).  The R&R observes

11  "the Court need not decide whether the rule of <u>Cunningham</u> is substantive or procedural at

12  this time" (while making the argument it may be substantive), because the second <u>Teague</u>

13  exception (for a "watershed" change in the law) "may apply" due to "the unique nature of the

14  standard of proof beyond a reasonable doubt."  R&R 14:15-18; *see* R&R 14:11-15 (the two

15  <u>Teague</u> "exceptions" to the non-retroactivity of new rules of criminal procedure are:  (1) "it

16  places certain kinds of primary, private individual conduct beyond the power of the criminal

17  law-making authority to proscribe;" or (2) "is an absolute prerequisite to fundamental fairness

18  that is implicit in the concept of ordered liberty"), *quoting* <u>Teague</u>, 489 U.S. at 311-314.  On

19  that basis, the R&R concludes Sandoval's <u>Blakely</u> claim should no longer be considered

20  exhausted and recommends "this action be stayed pending exhaustion of the claim."  R&R

21  10:15-17.

22   This Court finds that state court remedies remain
available to Petitioner, and the Court is unable to grant or deny
23   the Petition at this time.  The Court therefore recommends this
action be stayed while Petitioner returns to state court to exhaust
24   his state court remedies with respect to his claim, **or until such
time as the California Supreme Court rules in such a**
25   **manner as to make it clear that Petitioner is not entitled to
relief in the state courts as to claim four** [*sic*] **presented in**
26   **the petition**.

27  R&R 18:3-9 (emphasis added), *citing* <u>Jackson v. Roe</u>, 425 F.3d 654, 660 (9th Cir. 2005)

28  (interpreting <u>Rhines v. Weber</u>, 544 U.S. 269 (2005) as permitting a district court to stay a

*mixed petition* pending exhaustion of state court remedies).

06CV2814

1    The R&R concluded the federal court is unable to either grant or deny the Petition

2  "irrespective of the outcome of the <u>Teague</u> analysis" because "state court remedies remain

3  available with respect to Petitioner's claim," apparently because the state courts had not

4  addressed "whether <u>Cunningham</u> applies retroactively within the meaning of <u>Teague</u>."[8]  R&R

5  2:8-12.  The R&R acknowledged the same issues Respondent raises here associated with

6  Sandoval's <u>Blakely</u> claim were then pending before the California Supreme Court on remand

7  from the vacating of <u>Black I</u>.   This court reads the  subsequent decisions in <u>Black II</u> and

8  <u>Sandoval</u> as clarifying and narrowing state court remedies available to defendants raising

9  <u>Blakely</u> issues.   The court finds the uncertainty expressed in the R&R, in particular "whether

10  imposition of the upper term based on numerous prior adult convictions is sufficient to satisfy

11  the Sixth Amendment even if the trial judge also relied on other factors" (R&R 9:26-10:2) is

12  now resolved, in light of the July 2007 <u>Sandoval</u> decision and <u>Black II</u>, defeating a

13  construction of his claim as "unexhausted" (R&R 10:5-13).

14    The California Supreme Court has expressly narrowed the available state court

15  remedies on a <u>Blakely</u> theory.  <em>See</em> <u>Black II</u>, 41 Cal.4th at 816.  It now appears "perfectly

16  clear" this petitioner "has no chance of obtaining relief" should he return to state court

17  seeking review in light of <u>Cunningham</u> because at least one of the aggravating factors the

18  sentencing court considered, and the one given the most weight  -- Sandoval's prior

19  convictions  -- is permissible and sufficient to preserve the sentence against attack under

20  the <u>Apprendi</u>, <u>Blakely</u>, <u>Booker</u>,[9] and now <u>Cunningham</u> line of cases.  <em>See</em> <u>Black II</u>, 41 Cal.4th

21  at 818 ("The United States Supreme Court consistently has stated that the right to a jury trial

_____

22

23    [8]  If the outcome of the <u>Teague</u> analysis is immaterial to whether habeas relief can be
granted, as Respondent and the R&R present it, the recommendation must arise from the purported

24  failure to exhaust (<em>i.e.</em>, "state court remedies remain available with respect to Petitioner's claim").
R&R 2:8-12, 4:6-9.  For the reasons discussed herein, this court approaches the analysis differently

25  and concludes it can reach and deny the Petition on the merits.  Not only does this court construe
the claim as exhausted, but even of it were not, it is now clear Sandoval "does not raise even a

26  colorable federal [habeas] claim."  <em>See</em> <u>Cassett</u>, 406 F.3d at 623-24.

27    [9]  In <u>Booker</u>, 543 U.S. 220, the Court determined the mandatory nature of the Federal
Sentencing Guidelines implicated Sixth Amendment rights and requires they be read as merely

28  advisory provisions recommending, rather than requiring, the selection of particular sentences in
response to differing sets of facts.  "California's DSL . . . in this context, resembles pre-<u>Booker</u>
federal sentencing in the same ways Washington's sentencing system did" when the Court examined
it in <u>Blakely</u>.  <u>Cunningham</u>, -- U.S. --, 127 S.Ct. at 866 n.10.

1   does not apply to the fact of a prior conviction . . . . '[R]ecidivism . . . is a traditional, if not the

2   most traditional, basis for a sentencing court's increasing an offender's sentence'"), *quoting*

3   Almendarez-Torres v. United States, 523 U.S. 224, 243 (1998), *and also citing* Cunningham,

4   127 S.Ct. at 868, Blakely, 542 U.S. at 301.  Black II leaves this court with virtually no doubt

5   as to the outcome of Sandoval's aggravating factor theory should he return to state court for

6   re-adjudication of the issue of judicial fact-finding in the sentencing context:

> Cunningham requires us to recognize that aggravating
> circumstances serve two analytically distinct functions in
> California's current determinate sentencing scheme.  One
> function is to raise the maximum permissible sentence from the
> middle term to the upper term.  The other function is to serve as
> a consideration in the trial court's exercise of its discretion in
> selecting the appropriate term from among those authorized for
> the defendant's offense.  Although the DSL does not distinguish
> between these two functions, in light of Cunningham it is now
> clear that we must view the federal Constitution as treating them
> differently.  Federal constitutional principles provide a criminal
> defendant the right to a jury trial and require the prosecution
> prove its case beyond a reasonable doubt as to factual
> determinations (**other than prior convictions**)[10] that serve the
> first function, but leave the trial court free to make factual
> determinations that serve the second function.  **It follows that
> imposition of the upper term does not infringe upon the
> defendant's constitutional right to jury trial so long as one
> legally sufficient aggravating circumstance has been found
> to exist by the jury, has been admitted by the defendant, or
> is justified based upon the defendant's record of prior
> convictions**.

19   Black II, 41 Cal.4th at 815-16 (emphasis added).

20   Thus, in Black II, applying Cunningham and its antecedents, the California Supreme

21   Court determined "the presence of one aggravating circumstance renders it lawful for the

22   trial court to impose an upper term sentence" so that "judicial fact finding on . . . additional

23   aggravating circumstances is not unconstitutional."  Black II, 41 Cal.4th at 816.  This court

24

25      10      Black II rejected that defendant's narrow reading of the "prior conviction" Apprendi
    exception, in reliance on People v. McGee, 38 Cal.4th 682 (2006).  "[T]he exception in Apprendi for
26   'the fact of a prior conviction' permits a trial court to decide whether a defendant has served a prior
    prison term."  Black II, 41 Cal.4th at 819.  "As we recognized in McGee, numerous decisions from
27   other jurisdictions have interpreted the Almendarez-Torres exception to include not only the fact that
    a prior conviction occurred, but also other related issues that may be determined by examining the
28   records of the prior convictions."  Id., citing inter alia United States v. Smith, 474 F.3d 888, 892 (6th
    Cir. 2007) (no right to a jury trial concerning the circumstance whether defendant's criminal history
    was "extensive and egregious").

sees no principled difference between an observation imposition of the upper term is constitutionally justified when "the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence," no matter how many additional aggravating facts may also be found by the court (wrongly or rightly), and an observation that if the aggravating factor found by the court is an <u>Apprendi</u> exception (*i.e.*, a prior conviction, which does not require fact-finding beyond a reasonable doubt), the upper term is constitutionally justified.

The <u>Cunningham</u> rationale was predicated on the law expressed in <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> existing at the time Sandoval worked his way through the state courts and upon which he expressly relies in his Petition. The exhaustion requirement is satisfied for federal habeas review purposes when the petitioner has provided the state courts with a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982). While an intervening change in federal law can cast a previously exhausted claim in a fundamentally different light, rendering the claim unexhausted (*see* <u>Picard</u>, 404 U.S. at 276), this court concludes that has not happened in Sandoval's sentencing circumstances.[11] Even though <u>Cunningham</u> announces a new rule, as discussed below, a <u>Teague</u> analysis disposes of the argument it renders Sandoval's claim unexhausted.

The court construes this petitioner's claim as remaining exhausted notwithstanding the subsequent <u>Cunningham</u> decision and reaches the merits of his federal habeas claim.

---

[11]   The R&R suggests the recommendation would be to *grant* Sandoval habeas relief but for the exhaustion issue, adopting Respondent's characterization that "the recent Supreme Court opinion in <u>Cunningham</u> casts Petitioner's claim in a significantly different light," so that "Petitioner should be required to return to state court to present the claim again in light of <u>Cunningham</u> while the Petition is stayed in this Court." R&R 5:25-6:4, *quoting* Ans. at 2. The court rejects the R&R finding "the state court's adjudication of Sandoval's claim was contrary to and/or involved an unreasonable application of clearly established federal law set forth in" <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, "for the reasons explained in <u>Cunningham</u>." R&R 4:1-6. The court also rejects the suggestion the Petition is not exhausted, "preclud[ing] [this court] from granting [the] petition." R&R 4:9-10. The court accordingly rejects the recommendation the federal habeas petition be stayed for a return to state court neither sought by Sandoval nor likely to produce a different outcome on his <u>Blakely</u> claim. <u>Cunningham</u> applied the <u>Apprendi</u> "bright-line rule" that "***[e]xcept for a prior conviction***, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" <u>Cunningham</u>, 127 S.Ct. at 868, *quoting* <u>Apprendi</u>, 530 U.S. at 490. Sandoval was sentenced in consideration of his prior convictions, an express exception to the higher standard of proof.

1   In this court's view, there is no "new" claim in the Petition due solely to the issuance of a

2   United States Supreme Court decision after the Petition was filed.  Even if <u>Cunningham</u>

3   altered the light in which his claim may be viewed, a <u>Teague</u> analysis disposes of any

4   impediment to reaching the merits of Sandoval's claim.

5        **D.    <u>Teague Analysis</u>**

6        In recommending the court stay this action, the R&R concludes the court "need not

7   decide at this time whether <u>Cunningham</u> announced a new rule which may not be applied

8   retroactively under <u>Teague</u> . . . because state court remedies remain available to Petitioner

9   on his claim" R&R 4:3-90.  The R&R nevertheless performs a <u>Teague</u> analysis.[12]  This court

10  likewise does so as a prerequisite to reaching the merits of the Petition, but with the benefit

11  of subsequent clarifying authority.

12       The <u>Teague</u> doctrine is a "nonretroactivity principle" that "prevents a federal court

13  from granting habeas corpus relief to a state prisoner based on a rule announced after his

14  conviction and sentence became final." <u>Caspari v. Bohlen</u>, 510 U.S. 383, 389 (1994); *see*

15  <u>Horn v. Banks ("Banks I")</u>, 536 U.S. 266, 271 (2002).  "If the <u>Teague</u> doctrine is 'properly

16  raised by the state,' a federal court must conduct a threshold <u>Teague</u> analysis prior to

17  considering the merits of a petitioner's claim." <u>Flores v. Hickman</u>, -- F.Supp.2d –, 2008 WL

18  342748 (C.D.Cal. Jan. 25, 2008) at * 7 (denying habeas relief), *citing* <u>Banks I</u>, 536 U.S. at

19  272, <u>Caspari</u>, 510 U.S. at 389.

20       "Under the <u>Teague</u> framework, an old rule applies both on direct and collateral review,

21  but a new rule is generally applicable only to cases that are still on direct review." <u>Whorton</u>

22  <u>v. Bockting</u>, -- U.S. --, 127 S.Ct. 1173, 1180-84 (Feb. 28, 2007) (holding the Confrontation

23  Clause rule announced in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) was new because

24  not "dictated" by governing precedent existing at the time the challenged conviction became

25

26      [12]  "The Court does not need to determine at this time whether <u>Cunningham</u> announces a
new rule within the meaning of <u>Teague</u>, whether such a rule is substantive or procedural, and, if

27  procedural, whether it falls within the second <u>Teague</u> exception.  Based on the discussion above it
is not 'perfectly clear' that Petitioner 'has no chance of obtaining relief' due to a <u>Teague</u> bar.  <u>Cassett</u>,

28  406 F.3d at 623-24.  Rather, the resolution of the <u>Teague</u> issue is complex enough that it implicates
the principles of comity and the legislative goals of AEDPA which the Ninth Circuit held in <u>Cassett</u>
were necessary to avoid 'depriv[ing] state courts of the opportunity to address a colorable federal
claim in the first instance and grant relief if they believe it is warranted.' <u>Id.</u> at 624."  R&R 15:4-11.

final, but it did not apply retroactively because it is a procedural rule rather than a substantive rule, and one not rising to watershed status), *citing* Griffith v. Kentucky, 479 U.S. 314 (1987). "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding.'" Whorton, 127 S.Ct. at 1180-81, *quoting* Saffle v. Parks, 494 U.S. 484, 495 (1990) (*quoting* Teague, 489 U.S. at 311); *see also* Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004).

> "First, the court must determine when the defendant's conviction became final." Banks II, 542 U.S. at 411. . . . "Second, it must ascertain the 'legal landscape as it then existed,' and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule . . . . That is, the court must determine whether the rule is actually 'new'." [Id.] . . . . "Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity." [Id.]. . . .

Flores, 2008 WL 342748 at *7.

As calculated above, Sandoval's conviction became final in April 2006, well in advance of the Cunningham decision.  The "legal landscape" at that time may be discerned from the Apprendi/Blakely/Booker line of cases.  As succinctly traced in Flores, for Teague analysis purposes, a holding constitutes a new rule "if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" Graham v. Collins, 506 U.S. 461, 467 (1992), *quoting* Teague, 489 U.S. at 301.

For Teague purposes, the first question is whether Cunningham "applied an old rule or announced a new one." *See* Whorton, 127 S.Ct. at 1181.  Those district courts that have considered the issue appear uniformly to have concluded Cunningham announced a new rule, as its holding is similar to those in Apprendi, Blakely, and Booker, each of which announced a "new rule" for Teague purposes.  *See, inter alia*, *discussion and authority in* Flores, 2008 WL 342748 at **8-9.  "The new rule principle . . . validates reasonable good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." Whorton, 127 S.Ct. at 1181; Bohlen, 510 U.S. at 395-96.

1   This court concurs with the multiple district court cases after <u>Cunningham</u> and <u>Black II</u>

2   concluding <u>Cunningham</u> announces a new rule.

3          When a "new rule" is procedural rather than substantive, the rule cannot be applied

4   in a collateral attack on a conviction that had become final before the rule was announced

5   unless it is a "watershed rul[e] of criminal procedure implicating the fundamental fairness and

6   accuracy of the criminal proceeding." <u>Saffle</u>, 494 U.S. at 495. "This exception is 'extremely

7   narrow.'" <u>Whorton</u>, 127 S.Ct. at 1181-82, *quoting* <u>Summerlin</u>, 542 U.S. 384 (tracing authority

8   suggesting few, if any such rules have yet emerged to satisfy the requirements for watershed

9   status justifying retroactive application).

10              In order to qualify as watershed, a new rule must meet two
                requirements.  First, the rule must be necessary to prevent "an
11              ' "impermissibly large risk" ' " of an inaccurate conviction. . . .
                Second, the rule must "alter our understanding of the bedrock
12              procedural elements essential to the fairness of a proceeding."

13   <u>Whorton</u>, 127 S.Ct. at 1182 (citations omitted), *quoting* <u>Summerlin</u>, 542 U.S. at 356; *see*

14   <u>Beard v. Banks ("Banks II")</u>, 542 U.S. 406, 411 (2004); <u>Caspari</u>, 510 U.S. at 390).

15          Assuming the <u>Cunningham</u> rule is new, the court must then determine whether it falls

16   within one of the two exceptions to the <u>Teague</u> non-retroactivity doctrine.  The <u>Teague</u> bar

17   "does not apply to (1) rules forbidding punishment 'of certain primary conduct [or to] (2) rules

18   prohibiting a certain category of punishment for a class of defendants because of their status

19   or offense.'" <u>Banks II</u>, 542 U.S at 416-17; <u>Summerlin</u>, 542 U.S. at 351-52.  The first

20   exception does not apply to <u>Cunningham</u>'s procedural rule because it does not affect who

21   or what type of conduct may be punished.   A rule "requiring a jury rather than a judge find

22   the essential facts bearing on punishment" is a "prototypical procedural rule[]" and such rules

23   "do not produce a class of persons convicted of conduct the law does not make criminal. .

24   . ." <u>Summerlin</u>, 542 U.S. at 352-53; *see* <u>Schardt v. Payne</u>, 414 F.3d 1025, 1036 (9th Cir.

25   2005) ("<u>Blakely</u> allocated some of the decision-making authority previously held by judges

26   to juries," making it a "procedural rule").

27          "The second exception is for watershed rules of criminal procedure implicating the

28   fundamental fairness and accuracy of the criminal proceeding." <u>Summerlin</u>, 542 U.S. at 355-

     58, *citing* <u>Banks II</u>, 542 U.S. at 417, <u>Whorton</u>, 127 S.Ct. at 1181.  "[A] change in the law

requiring a jury to make the factual findings on which an upper sentence is based, rather than a trial judge, does not announce a watershed rule." <u>Flores</u>, 2008 WL 342748 at *9, *relying on* <u>Summerlin</u>, 542 U.S. at 355-58, <u>Schardt</u>, 414 F.3d at 1036. "Thus, <u>Cunningham</u> 'announced a new procedural rule that does not apply retroactively to cases already final on direct review.'" <u>Flores</u>, 2008 WL 342748, *quoting* <u>Summerlin</u>, 542 U.S. at 358, *and citing* <u>Schardt</u>, 414 F.3d at 1034-36, <u>Fennen v. Nakayema</u>, 494 F.Supp.2d 1448, 1155-56 (E.D.Cal. 2007).

As traced above, it is now apparent <u>Cunningham</u> has not and likely will not be applied retroactively to habeas petitioners like Sandoval, whose convictions became final before that decision. *See discussion in* <u>Eddington v. Adams</u>. 2008 WL 397290 (E.D.Cal. Feb. 8, 2008); *see* <u>Doughtie v. Scribner</u>, 2007 WL 2669922 (E.D.Cal. Sept. 7, 2007) ("Cunningham does not apply retroactively to convictions which became final before it was decided"), *citing* <u>Fennen</u>, 494 F.Supp.2d 1148, <u>Rosales v. Horel</u>, 2007 WL 1852186 (S.D.Cal. June 26, 2007), <u>Salerno v. Schriro</u>, 2007 WL 2153584 (D. Ariz. July 24, 2007).

> That courts have consistently held <u>Cunningham</u> to be inapplicable on collateral review should not be surprising. Courts have similarly held the cases from which <u>Cunningham</u> is derived, *i.e.*, <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), to be non-retroactive as well.

<u>Storie v. Kramer</u>, 2008 WL 435294 (E.D.Cal. Feb. 14, 2008) at *2,[13] *citing* <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664, 666-667 (9th Cir.2002) (<u>Apprendi</u>); <u>Schardt</u>, 414 F.3d at 1036 (Blakely); <u>United States v. Cruz</u>, 423 F.3d 1119, 1121 (9th Cir.2005) (<u>Booker</u>); *see also* <u>Garcia v. Evans</u>, 2008 WL 214363 at *13 (E.D.Cal. Jan. 24, 2008) ("Because the state court's decision was issued prior to <u>Cunningham</u>, the issue becomes whether that decision

---

[13]   "See <u>Jordan v. Evans</u>, 2007 WL 2703118, at *21 (S.D.Cal., Sept.14, 2007); <u>Beyett v. Yates</u> (2007 WL 2600745, at *2 (N.D.Cal. Sept.10, 2007); <u>Zimmeth v. Hernandez</u>, 2007 WL 2556771, at *9 (S.D.Cal. Sept.4, 2007); <u>Lopez v. Campbell</u>, 2007 WL 2500424, at *3) (E.D.Cal. Aug.30, 2007); <u>Marquez v. Evans</u>, 2007 WL 2406867, at *9 (N.D.Cal. Aug.20, 2007); <u>Bouie v. Kramer</u>, 2007 WL 2070330, at *3 (E.D.Cal. July 13, 2007); <u>Fennen v. Nakayema</u>, 494 F.Supp.2d 1148, 1155 (E.D.Cal.2007); <u>Rosales v. Horel</u>, 2007 WL 1852186 (S.D.Cal., June 26, 2007); <u>Salerno v. Schriro</u>, 2007 WL 2153584 (D.Ariz., July 24, 2007)." <u>Storie</u>, 2008 WL 435294 at *2.

1  should be applied retroactively to Petitioner on collateral review, which has not yet been

2  addressed by the Ninth Circuit," but for the reasons discussed in the ruling, applying Teague,

3  "this Court, like several other district courts, finds in the negative").[14]

4          Inasmuch as the court finds Sandoval's Blakely claim to be exhausted, it need not

5  reach an analysis of the stay and abeyance criteria.  The court rejects the R&R

6  recommendation Sandoval's federal petition be stayed to permit him the opportunity to return

7  to state court on Respondent's theory Cunningham materially alters the analysis of the

8  merits of his claim and may apply retroactively.

9          **E.     Petition Merits**

10         This court construes Sandoval's Petition as containing one exhausted Blakely claim:

11  the trial court's imposition of the upper term sentence in December 2003 allegedly violated

12  the Blakely rule because the aggravating factors were neither found by the jury nor admitted

13  by Petitioner.   The court finds the claim to be without merit, as not contrary to clearly

14  established United States Supreme Court authority at the time of his sentencing nor an

15  unreasonable application of such authority.  Sandoval is simply mistaken in his contention

16  "none of the aggravating factors was permissible under Blakely, [so] the trial court is

17  effectively precluded from imposing the upper term."  Pet. 6:16-17.

18         In both Apprendi and Blakely, state law set an ordinary sentencing range for the crime

19  at issue but allowed the court to impose a sentence in excess of that range if it determined

20  specified facts existed that were not intrinsic to the crime.  In January 2005, the Court

21  decided Booker, applying the Blakely holding to find the Federal Sentencing Guidelines

22  unconstitutional if applied as mandatory rather than advisory,  but constitutionally acceptable

23  if discretionary: "For when a trial judge exercises his discretion to select a specific sentence

24  within a defined range, the defendant has no right to a jury determination of the facts that the

25  judge deems relevant."  Booker, 543 U.S. at 233.

26

27         [14]   "Although in Cunningham, the Supreme Court invalidated California's upper-term
sentencing scheme based on facts not found by the jury, it specifically acknowledged, as it did in
28  prior cases, that sentences based on a defendant's prior convictions does not violate the Sixth
Amendment."  Garcia, 2008 WL 214363 at *15, citing Cunningham, 127 S.Ct. at 860, 864, 868;
Blakely, 542 U.S. at 301; Apprendi, 530 U.S. at 490; and Almendarez-Torres[], 523 U.S. 224.

The <u>Apprendi</u>, <u>Blakely</u>, <u>Booker</u>, and <u>Cunningham</u> decisions all support the conclusion trial courts are empowered to impose an upper term sentence predicated on findings regarding the defendant's prior criminal history without offending the defendant's constitutional right to trial by jury of facts used to enhance punishment after a conviction, both before and after <u>Cunningham</u>, irrespective of any other considerations. *See* <u>Cunningham</u>, 127 S.Ct. at 127; <u>Blakely</u>, 542 U.S. at 301; <u>Apprendi</u>, 530 U.S. at 490, 476-77 (prior convictions are *excepted* from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum be submitted to a jury or admitted by the defendant); <u>Almendarez-Torres</u>, 523 U.S. at 490; *see also discussion of multiple Circuits accord in*, *e.g.,* <u>Garcia</u>, 2008 WL 214363 at \*15. Under California law, only one aggravating factor need be found to enhance a middle term to the upper term: "A single aggravating factor is sufficient to impose an aggravated upper prison term where the aggravating factor outweighs the cumulative effect of all mitigating factors. . . ." <u>People v. Nevill</u>, 167 Cal.App.3d 198, 202 (1985); *see also* <u>Jordan v. Evans</u>, 2007 WL 2703118 (S.D.Cal. Sept. 14, 2007) (finding <u>Cunningham</u> did not apply to the petitioner's claim because it was decided after the petitioner's conviction became final (applying <u>Teague</u>), and finding and the trial judge's imposition of an upper-term sentence did not violate clearly established federal law because it was based in part on prior convictions); <u>Zimmeth v. Hernandez</u>, 2007 WL 2556771 (S.D.Cal. Sept. 2007 \*\*7-12); *see also, e.g.*, <u>People v. Osband</u>, 13 Cal.4th 622 (1996). "Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in <u>Blakely</u>, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum.'" <u>Black II</u>, 41 Cal.4th at 813 ("the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term").

Sandoval's upper term sentence was properly based in part on his prior convictions and recidivism, a finding he has no right to demand a jury decide. Although the trial judge found several aggravating factors in addition to Sandoval's criminal history, the latter factor alone permissibly exposed him to the sentencing range's upper term. Even if there were <u>Blakely</u> error in Sandoval's case, he has not established the requisite harm. <u>Recuenco</u>, 548

U.S. 212 (<u>Blakely</u> errors are not structural errors and are subject to harmless error analysis); *see* <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993) (in a habeas proceeding, the proper standard of review is whether the error had a "substantial and injurious effect"); *see also* fn 2, above. Any error in imposing the upper term for Sandoval's rape conviction was harmless. A jury presented with the ample, undisputed evidence of his recidivism would undoubtedly have rendered a verdict beyond a reasonable doubt regarding his criminal record.

## IV.    CONCLUSION AND ORDER

For all the foregoing reasons, the court finds no exhaustion issue prevents a decision on the merits of Sandoval's Petition.  On the merits, the court finds the state court's denial of Sandoval's <u>Blakely</u> claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court and did not violate his Sixth Amendment rights nor deny him due process, precluding federal habeas relief.  Accordingly, **IT IS HEREBY ORDERED** the R&R recommending stay and abeyance of the federal Petition for exhaustion of state remedies is **<u>REJECTED</u>**, the Petition is **<u>DENIED</u>**, and this matter is terminated in its entirety.

**IT IS SO ORDERED.**

DATED:  March 13, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN Burns**
United States District Judge